# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:13-CV-308-GCM

| | |
|---|---|
| STEPHEN THOMAS BAILIFF, )<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>DAVENPORT TRANSPORTATION, )<br>INC., )<br>    Defendant. )<br>_____ ) | ORDER |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. No. 6) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant's Memorandum in Support (Doc. No. 7), Plaintiff's Response (Doc. No. 11), and Defendant's Reply (Doc. No. 12). This matter is now ripe for disposition.

## I.  FACTUAL BACKGROUND

On May 22, 2011, Plaintiff Stephen Bailiff was terminated from employment as a truck driver at Davenport Transportation, Inc., the Defendant in this action. Prior to his termination, Plaintiff alleges a series of misconduct on the part of Davenport including harassing telephone calls, unsafe working conditions, and generally unfair and unequal treatment during his employment. Plaintiff also alleges that, after his termination, Davenport engaged in blacklisting and otherwise slandered him such that he has been unable to find other employment. Plaintiff alleges that he has sought relief from various government agencies since his termination, including the North Carolina Employment Security Commission, the U.S. Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, the U.S. Department of Labor generally, the Federal Motor Carrier Safety Administration, and the North Carolina Department of Transportation, none of which appear to have granted Plaintiff relief.

On May 22, 2013, Plaintiff filed a *pro se* Complaint using the Western District of North Carolina's pre-printed complaint form (Doc. No. 1). In it, he specifically alleges that he was "forced to drive equipment that failed to meet Federal Motor Carrier Safety Administration standards and or Department of Transportation regulations" which "posed a major threat to Plaintiff's and to public safety." (Pl. Compl. at 5). Plaintiff also alleges retaliation "for Plaintiff's upholding safety standards." (*Id.*) Construed liberally, it appears that the Complaint alleges (1) retaliation under Title VII; (2) retaliation for upholding Federal Motor Carrier Safety regulations; (3) a state law claim for wrongful termination; (4) a state law claim for defamation; and (5) a state law claim for blacklisting.[1] On August 13, 2013, this Court issued a *Roseboro* notice to Plaintiff, instructing him of the necessity to respond to Defendant's Motion to Dismiss within the allotted time. (Doc No. 8). Plaintiff then retained counsel and responded to Defendant's Motion to Dismiss, but only as to his claims for defamation, blacklisting, and wrongful termination.

## II.  LEGAL STANDARD

As a general rule, pleadings must entail "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard instructs that, when faced with a Rule 12(b)(6) motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and 'that a

---

[1] In its Memorandum, Defendant also addresses a possible claim under 42 U.S.C. § 1983. It appears that Plaintiff marked a box next to this statute under the heading "Jurisdiction," but then never addressed or mentioned a § 1983 claim in his Complaint. The Court believes that Plaintiff's checking the box was in error and that he did not intend to state a claim under § 1983; thus, the Court does not address it.

2

recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, these broad requirements still "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must state a claim that "raise[s] a right to relief above the speculative level" and must contain more than "naked assertion[s] . . . without some further factual enhancement." *Twombly*, 550 U.S. at 555-57.

Generally, a complaint filed *pro se* "must be held to less stringent standards than formal pleadings drafted by lawyers," and "is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a *pro se* litigant must still plead "more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). The rules of generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Godfrey v. Long*, No. 5:10-CT-3105-BO, 2012 WL 43593, at *1 (E.D.N.C. Jan. 9, 2012) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

### III. DISCUSSION

#### A. Retaliation under Title VII

That Plaintiff asserts a Title VII retaliation claim is a liberal construction of the Complaint. He does not directly invoke Title VII, nor does he explicitly allege unlawful discrimination. Rather, Defendant addresses the claim based on the Complaint's allegations of "unequal treatment" and the fact that it references earlier proceedings with the EEOC, (*see* Compl. at 3), but Plaintiff does not address the claim in his Response.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) (citing 42 U.S.C. § 2000e-2(a)(1)), *cert. denied*, 132 S. Ct. 398 (2011). Title VII is not, however, a "general bad acts statute," and "does not prohibit private employers from retaliating against an employee based on [his] opposition to discriminatory practices that are outside the scope of Title VII." *Id.* Put more plainly, a Court cannot award relief to a Plaintiff who has been "discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin." *Id.* (citing 42 U.S.C. § 2000e-5(g)).

Here, Plaintiff alleges various instances of "unequal treatment," such as requests to relocate from Gastonia, North Carolina to Asheville, North Carolina, and Defendant's failure to follow its own disciplinary procedures. He also notes that he filed an earlier complaint with the EEOC, which he says "did not take the case." (Compl. at 3). At no point, however, does he claim membership in a protected category or allege discrimination on the basis thereof. Thus, to the extent that Plaintiff intends to assert a claim under Title VII, the Complaint fails to adequately state a claim.

Defendant points out that Plaintiff's Title VII claim also fails because it was not timely filed. 42 U.S.C. § 2000e-5(f)(1) requires that plaintiffs file suit within ninety days of receiving a "Right to Sue" letter from the EEOC. Defendant asserts that Plaintiff's Right to Sue letter was issued on November 22, 2011 and has filed copies of the letter in support. (Doc. No. 14). Indeed, Plaintiff's Complaint notes that on November 22, 2011, the "EEOC did not take the case," (Compl. at 3), implying that Plaintiff was sent a Right to Sue letter on that date. Thus, even if the

4

Plaintiff had adequately stated a claim for retaliation under Title VII, the claim would be time-barred.

## B. Retaliation under FMCS Regulations

Plaintiff appears to assert a claim for "retaliation . . . for Plaintiff's upholding FMCSA and D.O.T. safety regulations." (Compl. at 11). Defendant asserts that Plaintiff has failed to exhaust administrative remedies as required by the Surface Transportation Assistance Act ("STAA"), which is a prerequisite for this type of claim. Plaintiff does not address the claim in his Response.

Claims of retaliation for an employee upholding a commercial motor vehicle safety regulation fall under the Surface Transportation Assistance Act, specifically the provisions of 49 U.S.C. § 31105. This statute makes it illegal to discharge or otherwise discriminate against an employee because he has "filed a complaint . . . related to a violation of a commercial motor vehicle safety or security regulation," or because he has "refuse[d] to operate a vehicle because (i) the operation violates a regulation . . . of the United States related to commercial motor vehicle safety or health; or (ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's unsafe condition." 49 U.S.C. § 31105(a). The statute goes on to explain that employees wishing to file a complaint for a violation of the statute may do so "with the Secretary of Labor not later than 180 days after the alleged violation occurred." 49 U.S.C. § 31105(b). The Secretary is to then investigate the complaint and issue an order which, if not objected to, becomes final and not subject to judicial review. *Id.* If the Secretary fails to issue a final decision within 210 days after the filing of the complaint, the employee may bring a lawsuit in federal district court. 49 U.S.C. § 31105(c).

Plaintiff does not contend that he filed a complaint for retaliation within the parameters of the STAA. He notes only that he notified the Department of Labor of his situation on December 2, 2011, and that it "did not investigate [his] case 'due to duplication of government services'—i.e. EEOC was handling the case—which they didn't take." (Compl. at 3). He also notes having had some type of interaction with the Federal Motor Carrier Safety Administration on June 1, 2011, but does not elaborate. (*Id.*) He certainly does not assert having followed the procedures laid out in 49 U.S.C. § 31105 or that he has exhausted administrative remedies under the statute. Defendant correctly notes that there is no separate private right of action outside the scheme set forth in the STAA. *See, e.g.*, *Kornischuk v. Con-Way Cent. Express*, 1:03-CV-10013, 2003 WL 21977202, at *3 (S.D. Iowa June 4, 2003). Significantly, the failure to exhaust administrative remedies under this statute deprives a district court of subject matter jurisdiction to address the claim. *See Rose v. Anderson Hay and Grain Co.*, No. CV-10-055-RMP, 2010 WL 3211948 (E.D. Wash. Aug. 6, 2010) ("Congress granted district courts subject-matter jurisdiction in 40 U.S.C. § 31105 only in cases in which the Secretary of Labor fails to issue a final decision within 210 days after the filing of the complaint . . . ."). In *Rose*, as in this case, there was "no allegation that [the plaintiff] had ever filed an initial complaint with the Secretary of Labor." *Id.* at *1. Thus, to the extent that Plaintiff intends to assert a claim for retaliation under the STAA, this claim is dismissed for lack of subject matter jurisdiction.

**C. Wrongful Termination**

Plaintiff also appears to assert a claim for wrongful termination in violation of public policy, alluded to in his Complaint and addressed more directly in his Reply. The crux of his claim is based on allegations that he was terminated for "upholding FMCSA and DOT safety regulations." (Compl. at 11). Plaintiff's allegations appear to stem from an incident in which he

raised concerns about a truck which "had multiple safety defects" such that its operation "endanger[ed] Plaintiff and public." (Compl. at 8).

"North Carolina is an employment at-will state," meaning that an employee can be discharged at any time, "without regard to the quality of [his] performance." *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331 (1997). The exceptions to this rule are scarce, but North Carolina courts do recognize an exception where an employee's termination "offends public policy." *Id.* at 332 (citing *Coman v. Thomas Mfg. Co.*, 325 N.C. 172 (1989)). At bottom, these narrow exceptions are meant to "prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." *Id.* at 334. One such exception was recognized by the North Carolina Supreme Court in *Coman v. Thomas Manufacturing Co.*, where an employee was terminated for refusing to falsify driver records required by federal law. 325 N.C. 172, 173 (1989). There, the court held that "it is the public policy in this jurisdiction that the safety of persons and property on or near the public highways be protected." *Id.* at 176. To that end, the court chose to "[p]rovid[e] employees with a remedy should they be discharged for refusing to violate this public policy." *Id.*

In its Reply, Defendant argues that Plaintiff's assertion of public policy violations stems from violations of federal rather than state law, and that the ruling in *Coman* was based primarily on violations of state law. Indeed, the court in *Coman* was careful to note that its decision was dependent at least in part on violations of North Carolina law, but also noted that federal and state highway regulations are often intertwined and that "almost every aspect of transportation and travel on the highways" is subject to state regulation for safety. *Id.* While it is unclear whether violations of purely federal law could constitute a violation of the public policy of North

7

Carolina, the Court need not expound on this topic further because the Plaintiff's Complaint is fatally flawed otherwise.

While Plaintiff does appear to allege that he was terminated for refusing to operate unsafe equipment on public highways, he never attempts to explain why or precisely how the equipment was unsafe. He simply claims that the equipment had "multiple truck safety defects." (Compl. at 8). Plaintiff makes vague reference to a violation of "U.S. Postal Regulations" for "[b]roken door locks," (*id.*), but this hardly rises to the level of the threat to public safety contemplated in *Coman*. In that case, a trucking company had forced its employees to drive trucks for periods of time longer than permitted by federal regulation and also forced them to lie about the amount of time they spent driving by falsifying records. *Coman*, 325 N.C. at 173. The result was that a number of potentially fatigued drivers were operating trucks on North Carolina highways. Here, Plaintiff only alludes to minor mechanical defects and otherwise fails to explain why the trucks he was asked to drive were unsafe. As such, the Court is left with little more to consider than "naked assertion[s] . . . without . . . further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Given the high hurdle that North Carolina courts have set with respect to wrongful termination claims, the Plaintiff fails to allege sufficient facts to demonstrate a violation of public policy. Thus, Plaintiff fails to state a claim for wrongful termination in violation of public policy.

**D. Defamation**

Plaintiff asserts a claim for defamation of character as well. Specifically, he alleges that "Defendant made false statements in written and verbal form during employment, in [the] termination letter, and during the employment securities commission hearing." (Compl. at 5). He also asserts that "one prospective employer admitted being told defamatory statements about

plaintiff by Davenport Transportation personnel," and that this has contributed to his inability to find employment. (Compl. at 6).

In order to state a claim for defamation, a plaintiff must show: (1) that the defendant made false, defamatory statements; (2) of or concerning the plaintiff; (3) which were published to a third person; and (4) which caused injury to the plaintiff's reputation. *Tyson v. L'Eggs Prods., Inc.*, 351 S.E.2d 834, 840 (N.C. Ct. App. 1987). A defamatory statement may be written (libel) or spoken (slander). *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002). It may also be characterized either as defamation *per quod*, which statements are not obviously defamatory but may be construed that way in context, or defamation *per se*, which statements are obviously defamatory. *Renwick v. News & Observer Pub. Co.*, 312 S.E.2d 405, 408 (N.C. Ct. App. 1984). Defamation *per se* has been defined by the North Carolina Court of Appeals as including a statement that: "(1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt, or disgrace." *Aycock v. Padgett*, 516 S.E.2d 907, 909 (N.C. Ct. App. 1999) (quoting *Phillips v. Winston-Salem/Forsyth County Bd. Of Educ.*, 450 S.E.2d 753, 756 (N.C. Ct. App. 1994)). Significantly, the plaintiff must plead with particularity the words attributed to the defendant. *Stutts v. Duke Power Co.*, 266 S.E.2d 861, 866 (N.C. Ct. App. 1980). While he need not repeat the words verbatim, the defamatory statements must "be alleged 'substantially' in haec verba, or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Id.*

Defendant correctly notes that the statute of limitations in North Carolina for a defamation action is one year from the date the action accrues. N.C. GEN. STAT § 1-54(3).

Plaintiff filed this Complaint on May 22, 2013. In his Complaint, Plaintiff notes that he was terminated on May 22, 2011. (Compl. at 10). Thus, to the extent he alleges that defamatory statements were made during his employment, a claim based on those statements is time-barred. Likewise, the Employment Security Commission hearing Plaintiff references occurred on "September 16, 2011 [at] 8:30am," (Compl. at 3), still well beyond the statutory period for a defamation claim.

Plaintiff does not contest these limitations in his Response. Instead, he points to page six of his Complaint, wherein he alleges that "one prospective employer admitted being told defamatory statements about plaintiff by [Defendant]." (Compl. at 6). Plaintiff contends that this provides a sufficient allegation to survive a motion to dismiss because "since these job applications were done post-employment, . . . they arguably fall within the one-year statute of limitations." (Resp. at 3). In its Reply, Defendant characterizes these allegations as "unidentified defamatory statements to an unidentified prospective employer on an unidentified occasion following the termination of his employment." (Reply at 1). Indeed, Plaintiff provides no further detail about what was allegedly said, to whom it was said, or when it was said. Thus, he fails to provide the Court with any means of determining whether the alleged statement was actually defamatory. While the Court cannot say whether the alleged statement falls within the applicable statute of limitations, it can say conclusively that Plaintiff has failed to plead a claim for defamation with sufficient particularity, rendering it facially deficient.

**E. Blacklisting**

Finally, the Complaint alleges that Defendant engaged in "[b]lacklisting against Plaintiff . . . to prospective employers." (Compl. at 5). Seemingly in support of this claim, Plaintiff notes

that he has sent out "over 100 resumes" and has received no response. (Compl. at 6). He also calls attention to the same alleged statement upon which he based his claim for defamation. (*Id.*)

North Carolina law prohibits a former employer from "prevent[ing] or attempt[ing] to prevent, by word or writing of any kind, [a] discharged employee from obtaining employment with any other person, company or corporation." N.C. GEN. STAT. § 14-355. Employers who violate the statute are guilty of a misdemeanor and "liable in penal damages to such discharged person" in a civil action. *Id.* The statute also notes, and numerous North Carolina cases on the subject reiterate, that the statute does not prohibit employers from providing "a truthful statement of the reason for such discharge" upon request to any person, company, or corporation with whom the former employee has applied for employment. *Id.*; *see, e.g.*, *Holroyd v. Montgomery County*, 606 S.E.2d 353, 358 (N.C. Ct. App. 2004); *Friel v. Angell Care, Inc.*, 440 S.E.2d 111, 114-15 (N.C. Ct. App. 1994). Essentially, in order to violate the statute, the statements at issue must be unsolicited.

In its Motion to Dismiss, and again in its Reply, Defendant asserts that "a plain reading" of the Complaint indicates that the alleged defamatory statements made to Plaintiff's prospective employers were made in response to direct reference requests. (Reply at 3). In support, Defendant notes that these allegations come directly after the sentence: "Over 100 resumes sent out by Plaintiff for employment—no response." (Compl. at 6). In Response, Plaintiff notes that, while the Complaint does not say that the alleged statements were unsolicited, it does not say that they were solicited, either. (Resp. at 4).

Indeed, the Complaint does not say whether the alleged statements were solicited. It does not say much at all. Again, we are only told that an unnamed prospective employer was told a "defamatory statement" at an unspecified time and place. As such, the Court is left with no more

than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even a liberal reading of the Complaint requires that the Plaintiff plead "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Plaintiff is not required to plead his entire case in the Complaint, he must still allege sufficient facts upon which to base a legal claim. Some information about the nature of the statement, or at least Plaintiff's *understanding* of the statement would be helpful to this determination. However, simply alleging the communication of a "defamatory statement" is a bare legal conclusion and wholly insufficient to state a claim for blacklisting.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. No. 6) is hereby **GRANTED**. All claims against Defendant are hereby **DISMISSED**.

**SO ORDERED.**

Signed: December 2, 2013

Graham C. Mullen
United States District Judge